UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL RINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0392-CVE-PJC |
| | ) |
| BURLINGTON NORTHERN SANTA FE | ) |
| RAILWAY COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment (Dkt. 27). Plaintiff seeks to recover damages under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq., (FELA) based on defendant's alleged negligence and an alleged violation of the statutory duty imposed by the Federal Safety Appliance Act, 49 U.S.C. § 20301, et seq., (FSAA). Defendant argues that there are no disputed issues of material fact and that, as a matter of law, it neither acted negligently nor violated the FSAA. Plaintiff argues that disputed issues of material fact preclude summary judgment.

I.

Defendant is a common carrier engaged in interstate commerce by railroad. Plaintiff has been employed by defendant as a switchman/conductor since April 2007. Pursuant to the terms of the defendant's collective bargaining agreement with the union, when business is slow, defendant can place employees on "furlough status," during which time the employees are not paid. Defendant determines which employees to place on furlough based on their seniority - junior employees are placed on furlough before senior employees. If the railroad encounters a situation where it does not have enough active employees to complete a job, it will "call-in" furloughed employees for the

duration of that job. The most senior employees on furlough are given the first opportunity to take these call-in jobs.

On December 10, 2008, plaintiff was placed on furlough. On June 7, 2009, plaintiff was called in to work on an emergency and agreed to take the job. During that job, plaintiff was injured while tightening the brake on a train car. Plaintiff orally reported the injury to defendant within 48 hours of its occurrence. However, plaintiff did not file a written injury report with defendant until June 21, 2009, because he was unable to reach the appropriate person with whom to do so. In his injury report, plaintiff wrote:

> I was positioned on the ground straddling the rail. While tightening the brake I spun the slack out and cinched it down a couple of times on the last pull I felt something give. Then a sharp pain and heard a pop in my right shoulder immediately followed by pain shooting down my bicep and chest.

Dkt. # 27-1 at 2. Plaintiff testified in his deposition that the "give" he felt was both in the brake and in his arm. Dkt. # 27-2 at 119. The injury report form contains a section inquiring whether "there was any defect/malfunction/problem with the equipment or work," in response to which plaintiff wrote "unknown . . . I am not a carman I am not qualified to make that call." Id. at 1. However, plaintiff testified that he believes the slipping of the break constituted a defect. Dkt. # 27-2 at 166.

Defendant's employees are required to follow the Train, Yard, and Engine Safety Rules (TY&E Rules). Plaintiff repeatedly testified that the TY&E Rules in effect at the time of his injury permitted a person tightening a brake on the type of train car on which he was working to either "climb the ladder" or "it could be done from the ground straddling the rail." Dkt. # 27-2 at 57; see also id. at 106, 113, 118.

On June 10, 2009, three days after plaintiff's injury, defendant sent lead car inspector David Pettit and mechanical foreman T.D. Clark to inspect the brake on the car on which plaintiff was

injured. Pettit and Clark visually inspected the handbrake and set and released it three or four times. They recorded on the Report of Inspection that the condition of the handbrake was "OK." Dkt. # 27-3 at 1. Pettit testified that, when inspecting a handbrake, he checks to see if it "slips" or "jumps." Id. at 26. Pettit stated that a handbrake could slip if the release handle were not positioned properly. Id. at 14. Pettit further testified that, if the handbrake were being used properly and it slipped or gave, it would be considered defective. Dkt. # 27-4 at 15. Clark also testified that a handbrake is not supposed to give while being tightened and that if it were to do so during an inspection it would be "bad ordered" and "replaced." Dkt. # 27-5 at 30-31. Clark further testified that his understanding of the proper way to set a handbrake is to climb up on the car. Id. at 19.

Plaintiff was ultimately diagnosed with a torn bicep tendon and underwent surgery to repair it. Plaintiff's treating physician released him to work without restriction on either September 1, 2009 or October 1, 2009.[1] Plaintiff remained on furlough status until June 2010, when he returned to full-time employment with defendant. Plaintiff testified that, while he was on furlough both before and after his accident, he pursued alternate employment building fences. Dkt. # 27-2 at 61, 65-66, 128, 134, 170-171.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986);

---

[1] There is conflicting evidence regarding the date on which plaintiff was released to return to work. In his deposition, plaintiff testified that he was released on October 1, 2009. Dkt. # 27-2 at 152. However, plaintiff's treating physician testified that plaintiff was released to work on September 1, 2009. Dkt. # 42-1 at 30. In and of itself, the Court does not find this dispute to be material for purposes of determining defendant's liability.

Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(a) mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that the undisputed facts establish it is not liable under FELA either on a negligence theory or a statutory (FSAA) violation theory. Plaintiff argues that there are disputed issues of material fact that preclude summary judgment.

FELA is a "remedial and humanitarian" statute that imposes "liability to protect the safety of railroad employees." Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1235 (10th Cir.

4

2001) (internal quotations omitted). "FELA permits railroad workers to recover for injuries caused by the negligence of their employers or fellow employees." Id. In an "ordinary" FELA case, "the plaintiff must establish the negligence of his employer." Myers v. Reading Co., 331 U.S. 477, 482 (1947); see also King v. S. Pac. Transp. Co., 855 F.2d 1485, 1489 n.1 (10th Cir. 1988) ("Liability under the FELA is premised on the railroad's negligence, however small.").

In addition to recovering for negligence under FELA, a plaintiff can recover for a violation of the FSAA, which is considered an amendment to FELA. Urie v. Thompson, 337 U.S. 163, 189 (1949); Metcalfe v. Atchison, Topeka & Santa Fe Ry. Co., 491 F.2d 892, 895 (10th Cir.1974). Because the FSAA does not create an independent cause of action, such a claim must be brought under FELA. Id. In order to prevail on a FSAA theory of liability, "the injured employee . . . is required to prove only the statutory violation and thus is relieved of the burden of proving negligence." Id.

### A.    FELA Negligence Claim

In order to recover for negligence under FELA, a plaintiff must prove "the traditional common-law elements of negligence, *i.e.*: duty, breach, foreseeability, and causation." Volner v. UnionPac. R.R. Co., No. CIV-11-003-JHP, 2011 WL 6056552, at *2 (E.D. Okla. Dec. 6, 2011) (citing Adams v. CSX Transp., Inc., 899 F.2d 536, 539 (6th Cir. 1990)). In order to establish the foreseeability element, a plaintiff "must show [that defendant] had actual or constructive notice of the condition(s) that allegedly caused or contributed to the cause of his injuries." Smith v. BNSF Ry. Co., No. CIV-08-1203-D, 2011 WL 4346341, at *2 (W.D. Okla. Sept. 15, 2011); see also Volner, 2011 WL 6056552, at *3 ("If an employee claims that he or she was injured as a result of a defect in the premises or equipment, they must show that a defect occurred and that the defendant had notice of the defect, either actual or constructive.").

Defendant argues that there is no evidence that defendant had any actual or constructive knowledge of a defect in the handbrake prior to plaintiff's injury. Plaintiff does not address this argument in his opposition to defendant's motion, nor does plaintiff present any evidence that defendant had actual or constructive notice of a defect. The Court has reviewed the summary judgment record in its entirety and finds that there is no evidence on which a trier of fact could reasonably find that defendant had actual or constructive notice of a defect in the handbrake prior to plaintiff's injury. Summary judgment is granted in favor of defendant on plaintiff's claim of negligence under FELA.

**B.     FSAA Claim**

As noted above, in order to recover on a FELA claim premised on a violation of the FSAA, plaintiff need not prove negligence, but need only prove the statutory violation. Metcalfe, 491 F.2d at 895. The FSAA provides that a railroad carrier may use a vehicle "only if it is equipped with . . . efficient hand brakes . . . ." 49 U.S.C. § 20302(a). This statute creates "an absolute and unqualified prohibition against the [defendant's] using or permitting to be used, on its line, any car not equipped with 'efficient hand brakes.'" Myers, 331 U.S. at 482 (interpreting prior version of statute). Further, defendant "may be found liable if the jury reasonably can infer from the evidence merely that the hand brake which caused the injuries was on a car which the railroad was then using on its line, in interstate commerce, and that the brake was not an 'efficient' hand brake." Id. at 482-83. "Efficient means adequate in performance; producing properly a desired effect. Inefficient means not producing or not capable of producing the desired effect; incapable; incompetent; inadequate." Id. at 483.

The United States Supreme Court has recognized two methods of showing the inefficiency of a hand brake: "Evidence may be adduced to establish some particular defect, or the same

6

inefficiency may be established by showing a failure to function, when operated with due care, in the normal, natural, and usual manner." Id. Defendant argues that plaintiff cannot satisfy either method of proving inefficiency because he cannot establish a particular defect in the handbrake and because he cannot establish that he was using the hand brake in the normal, natural, and usual manner.

Defendant argues that plaintiff cannot establish that there was a particular defect in the hand brake. In support of its position, defendant cites to the testimony of Clark and Pettit, who each stated that the hand brake worked properly when they inspected it three days after plaintiff's accident. However, plaintiff testified that the brake "gave" on the day of his injury. Pettit and Clark each testified that, if a hand brake were to give, it would be defective.[2] If the jury believed plaintiff's testimony that the brake gave, it could reasonably infer that the brake was defective at the time of plaintiff's injury. The fact that the brake later worked properly does not preclude a finding that it was defective at the time of plaintiff's injury. See id. (finding that there can be proof of a FSAA violation "if there is proof that the mechanism failed to work efficiently and properly even though it worked efficiently both before and after the occasion in question"). There is a disputed issue of material fact as to whether the brake worked efficiently at the time of plaintiff's accident.

There is also a disputed issue of material fact as to whether plaintiff was operating the hand brake in the normal, natural, and usual manner. Defendant argues that the regulations in place at the

---

[2] Plaintiff argues that, pursuant to Williams v. Mo. Pac. R.R. Co., 11 F.3d 132 (10th 1993), "a hand brake that slips as it is being set is a defective or inefficient handbrake [sic] and a violation of the [FSAA]." Dkt. # 42 at 6. Contrary to plaintiff's assertion, Williams states no such thing. In fact, the defendant in Williams stipulated that the hand brake "was not in proper working condition." Id. at 134. Thus, the issue of whether the hand brake was inefficient was not before the court. The issue decided by the court in that case was whether plaintiff had presented sufficient evidence to support the damages awarded by the jury.

time of plaintiff's accident pertaining to the type of car on which he was working required that plaintiff climb up on the car to tighten the break. Clark's testimony supports this assertion. However, defendant has not submitted any regulations as part of the summary judgment record, and there is testimony in the record suggesting that more than one set of regulations exists. Plaintiff testified that he was not positive that the set of regulations presented to him at his deposition was the set of regulations in place at the time of his accident or that those regulations pertained to the car on which he was working at the time of his injury. Plaintiff also repeatedly testified that he believed it was proper for him to tighten the hand brake while standing on the ground.

Defendant also argues, mainly in its reply brief, that the "'slip' in the handbrake occurred because Plaintiff operated the handbrake without having the release or 'dog' in the down position." Dkt. # 53 at 1. In support of this proposition, defendant cites to Pettit's testimony that a slip "could" occur when the release handle is not in the proper position. Dkt. # 27-4 at 14. However, Pettit does not definitely state that the only way a slip could occur is if the release handle were improperly placed. Further, other than Pettit's statements regarding the general operation of handbrakes, there is no evidence in the summary judgment record that plaintiff improperly placed the release handle at the time of his injury. Thus, whether plaintiff was operating the hand brake in the normal, natural, and usual manner is an issue of fact that must be decided by a jury.

C.     **Damages for Lost Wages**

Defendant seeks summary judgment regarding plaintiff's claim for lost wages. "A FELA plaintiff, upon proof of employer liability, may recover damages for loss of earnings, medical expenses and pain and suffering." Williams, 11 F.3d at 135. "The burden rests upon the plaintiff to establish by sufficient evidence a factual basis for the amount of damages sought." Id. Defendant argues that plaintiff cannot prove that he incurred lost wages from his injury because he was on

furlough for the duration of the injury and, thus, would not have earned wages during that time regardless of the injury. However, plaintiff testified that, while he was injured, "[t]here were people in less - with less seniority than me" that were called in to work from furlough status. Dkt. # 27-2 at 154. Plaintiff also testified that defendant "didn't call me while I was under doctor's care. They didn't call me until the BNSF nurse released me." Id. Based on this testimony, a jury could reasonably infer that there were emergency jobs that plaintiff would have had the opportunity to perform while on furlough status but for the fact that he was injured. Plaintiff will be allowed to present evidence of lost wages to the jury at trial.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 27) is **granted in part** and **denied in part**: it is granted in favor of defendant on plaintiff's FELA claim based on negligence; it is denied on plaintiff's FELA claim based on violation of the FSAA.

**DATED** this 21st day of August, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE